315

THE BROOKLYN.

THE MILDRED.

THE BOWLING GREEN.

HAROLD L. VALENTINE, Inc., v. MANHATTAN LIGHTERAGE CORPORATION.

No. 13136.

District Court, E. D. New York.

Dec. 15, 1932.

Purdy & Purdy and Frank C. Mason, all of New York City, for libelant.

Thomas A. McDonald, of New York City, for claimant.

CAMPBELL, District Judge.

This is an action brought to recover damages alleged to have been caused by collision.

I find the facts as follows:

At all the times hereinafter mentioned, the libelant was a domestic corporation, organized and existing under and by virtue of the laws of the state of New York.

At all such times the libelant was the owner of the coal barge Brooklyn herein re-

ferred to, and that such barge, prior to the happening hereinafter described, was staunch, strong, tight, and in all respects seaworthy.

During the currency of process hereunder, the derrick lighters Mildred S. (described in the libel as the Mildred) and the Bowling Green were within this district and the jurisdiction of this court.

On Monday morning, March 7, 1932, the loaded barge Brooklyn was tied up outside of another barge on the south side of Pier 24, Brooklyn, N. Y., at the bulkhead where it had been lying loaded for some time.

During the afternoon of Saturday, March 5, 1932, the derrick lighters Mildred S. and Bowling Green were moored bow out, outside of a steamer lying on the north side of Pier 27, Brooklyn, N. Y., the steamer lying bow in the slip and across from the stern quarter bitt of the Brooklyn. The Bowling Green was the outside vessel. The weather at that time was clear.

At 9 o'clock a. m. on Sunday, March 6, 1932, a northeast storm warning north of Virginia Capes to Eastport, Me., was hoisted.

At about noon on March 6, 1932, it commenced to rain and the wind freshened.

At that time the Mildred S. had two lines out from her bow, and two lines out from her stern to the steamer.

The Bowling Green also had two lines out to the Mildred S., one from the bow and one from the stern, doubled up, and one from her inshore side to the steamer.

At 12:10 o'clock p. m., the captain of the Bowling Green, who was also in charge of the Mildren S., went to dinner, passing from the Mildred S. to the ship and then to the pier. The wind continued to freshen, and, when the captain returned at about 2 p. m., it was blowing strongly from the northeast.

The captain of the Bowling Green put out another line from her off shore side to the ship.

The wind still continued to freshen, and, at about 4 p. m., the captain of the Bowling Green slackened all of the lines from the lighters to the ship, so that they were up off No. 1 hatch, and the lighters angled out across the slip, the Bowling Green being against a New York Central covered barge.

The captain of the Bowling Green made no request for assistance, nor did he make any effort to communicate with the owner of the lighters, although there were vacant berths alongside the pier.

The captain of the Bowling Green made no effort to make his boat and the Mildred S. fast alongside the New York Central covered barge, which was in a less exposed position.

All the lines from the Bowling Green and the Mildred S. to the ship led up over her rail and down to cleats on her deck, and the constant moving of the lighters caused them to chafe. The distance from the deck of the Mildred S. to the rail of the steamer was from ten to twenty feet.

The captain of the Bowling Green did not leave his lighter after he returned from dinner on Sunday, and did not and could not inspect or adjust the lines from the lighters resting on the ship's rail, nor did he place seizings or other materials under the lines at the rail, to prevent chafing and wearing during the increasing storm, nor did he request any assistance from any one on the ship.

The lighters and the Brooklyn continued in the same relative positions, and the captains of the Bowling Green and the Brooklyn went to bed. The wind continued to increase, and about 11 o'clock p. m., having come around by the north, came out of the northwest, blowing directly into the slip at forty miles an hour. The wind continued to increase to over fifty miles an hour, and at about 3:30 o'clock a. m. on Monday, March 7, 1932, all the lines of the Bowling Green and the Mildred S. to the ship parted, at the ship's rail, and the Mildred S. and the Bowling Green went up in the slip, the Mildred S. against the outer of two tugboats alongside the bulkhead, ahead of the ship's bow, and the Bowling Green coming into contact with the Brooklyn, being jammed between the Brooklyn and the ship and damaging the Brooklyn.

The captain of the Broklyn tried to put fenders between the Brooklyn and Bowling Green, but did not succeed.

The lines of the Mildred S. and the Bowling Green were good lines.

■■ From the facts as found, the lighters Mildred S. and Bowling Green were wholly at fault.

The Brooklyn was a moored vessel, and the presumption is that the drifting vessels were at fault.

The lines of the Mildred S. and the Bowling Green were good lines, but they parted from chafing on the steamer's rail, as that is where they parted, and the lines were not produced.

The captain was aboard to inspect and adjust the lines. This he did not do, although he slackened the lines, but should have taken

steps to prevent, or requested assistance from the ship to prevent, the chafing of the lines on the rail of the ship.

The captain even at 4 o'clock p. m. on Sunday, when he slackened his lines, could have made fast the Bowling Green and the Mildred S. alongside of the New York Central covered barge, which was a more protected berth than alongside the ship.

The lighters Mildred S. and Bowling Green interposed the defense of inevitable accident, and as was said by Judge Ward in the case of The Osceola (D. C.) 18 F.(2d) 415, at page 417: "To sustain this defense the defendant must prove, if the cause of the accident is shown, that he did not by want of care and skill according to the circumstances contribute to it or that he could not have prevented it by the exercise of much care and skill. On the other hand, if the cause is not shown, then the defendant must show all possible causes, and that he was not responsible for any of them."

As I have pointed out, by the exercise of care and skill, the collision could have been avoided by the lighters, and therefore they have not borne their burden and sustained the defense of inevitable accident.

The captain of the Brooklyn was not guilty of any negligence in failing to call upon her owner for help, when the Bowling Green swung over against the New York Central covered barge, a position in which the lighters remained for about twelve hours, as the lighters were then a safe distance from the Brooklyn and her captain had a right to expect that her lines would be properly tended and hold.

Both the Bowling Green and the Mildred S. had the same captain, and the lines of both lighters to the ship parted because of his failure to tend and properly inspect the lines and prevent their chafing.

I find as conclusions of law:

That the lighters Mildred S. and Bowling Green were negligently and carelessly allowed, by those for whose actions they were responsible, through failure to properly tend the lines thereof to the ship, to go adrift and to come into collision with the libelant's barge Brooklyn, and inflicting damage upon her for which said lighters are wholly to blame.

That neither the libelant nor the barge Brooklyn, nor any one for whose actions they were responsible, negligently caused or contributed to the damage to the said barge Brooklyn, and that they are wholly without blame.

That the libelant is entitled to a decree against the said lighters Mildred S. and Bowling Green for its damages with costs and interest and the usual order of reference.

That a decree may be entered in accordance with this opinion.

Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.